Taylor, Chief Justice
 

 On
 
 A
 
 recent case in Chancery, a question arose upon a bequest of one fourth to the children of A, and one other fourth to or among the cliil-
 
 *606
 
 dren of B, whether it should be divided
 
 per capita
 
 or
 
 per stirpes,
 
 and it was decided that the distribution should be
 
 per capita. Linch
 
 v.
 
 Pelham,
 
 (10
 
 Vesey
 
 167.) I beg leave to cjte pat>t of the chancellor’s opinion in that case, because it coincides with the opinion I had entertained in this from its opening, and because I felt the importance of the sentiments inculcated many years ago, when I joined in the decision of
 
 Whitehead
 
 v.
 
 Pritchard,
 
 (1
 
 Murph.
 
 382.) “Upon the next question, whether the distribution is to be per
 
 stirpes
 
 or
 
 per capita,
 
 I am not quite sure that my opinion is not against the intention. If there is a settled construction, founded upon cases decided, applying to the terms used, it is better to adhere to- that settled construction, though I may entertain some doubt whether it is according to the intention, than upon grounds, on which I cannot rest in every view of the case, to come to a decision, having a tendency to shake that which forms a rule of construction; and which, in practice, may have been acted upon in many cases. It is clear that if this had been a bequest to the younger children of two persons, equally to be divided between and among them, the division would be
 
 per capita.
 
 That rule has been applied in many instances, upon which doubts have been strongly raised: for instance, a gift to a brother and the children of a deceased brother, who without a will would take
 
 per stirpes:
 
 yet it has been held, that though the law would have given it in moities, that is not the effect of an express bequest.”
 

 There is, in my opinion, a settled construction upon all devises of the nature of that now before us, recorded in a series of decisions to be traced back for more than a century, by the aid of which, any counsel upon an inspection of a will, can advise his client as to the extent of his interest. I should deprecate such a departure from these adjudications as would, leave judges nothing to guide them, but the obscure, and often undisco verable intentions of the testators.
 

 
 *607
 
 As the devisor takes notice in his will that his brother
 
 John Ford
 
 is alive, by making a special devise to him, no doubt is left that he used the word “heirs” in the sense of “children,” and as a designation of the persons. They necessarily must carry the same meaning when applied to the heirs of
 
 Nancy Stowe,
 
 and still more clearly in relation to those of
 
 Sally Ward,
 
 whom he states to be dead. All these devisees are of equal kin to the devisor in their own persons, though making out their pedigree through different stocks, and would, were the parents of all dead, be entitled, under the
 
 statute of distribution,
 
 to a division
 
 per capita.
 
 And this I take to be the proper construction of the will, according to the principles established in the following cases, which are not essentially distinguishable from this.
 
 Blaklen
 
 v.
 
 Webb,
 
 (2 P.
 
 Wms.
 
 383.)
 
 Wild
 
 v.
 
 Bradbury,
 
 (2
 
 Vern. 705.)Northey v. Strange,
 
 (1 P.
 
 Wms.
 
 340.)
 
 Malcolm
 
 v.
 
 Martin,
 
 (3
 
 Bro. C. C.
 
 50.)
 
 Butler
 
 v.
 
 Stratton, [Ibid
 
 367.)
 
 Thomas
 
 v.
 
 Hole, (Forr.
 
 251.)
 
 Green
 
 v.
 
 Howard,
 
 (1
 
 Rro. C. C.
 
 31.)
 
 Phillips
 
 v.
 
 Gath,
 
 (3
 
 Bro. C. C.
 
 64.)
 
 Rayner
 
 v.
 
 Mowbray,
 
 (3
 
 Bro. C. C.
 
 234.)
 

 In relation to the share of
 
 Levi Ward,
 
 it would be impossible to collect the testator’s preference and affection for him from any parol evidence, and therefore no notice is taken of the facts alleged on the record. But there is on the face of the will sufficient evidence that he was a favorite nephew, by the specific bequest made to him in the first clause, and the express devise made to him by name, after the provision made for him as one of the heirs of
 
 Sally Ward.
 
 These circumstances too strongly point to the fact of his being an object of peculiar bounty, and will not admit of the rejection of the devise to him by name, as being a repetition of the first. The intent of that was to give him an additional share, and this I think ought to be the devise.